OLIVIA WALLACE, as Independent Adm'r of the Estate of Satoria Richardson, a Minor, Deceased, Plaintiff-Appellant, v. ALEXIAN BROTHERS MEDICAL CENTER, Defendant-Appellee.

First District (5th Division) No. 1—08—2852

Opinion filed April 24, 2009.

Alan C. Hoffman, of Alan C. Hoffman & Associates, and Anthony M. Sciara, both of Chicago, for appellant.

Brian T. Levin, Brad E. Wolven, and Mehreen S. Sherwani, all of Lowis & Gellen, LLP, of Chicago, for appellee.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiff-appellant Olivia Wallace, as independent administrator of the estate of Satoria Richardson, a minor, deceased (plaintiff), brought a complaint at law against, in part, defendant-appellee Alexian Brothers Medical Center (defendant) alleging medical negligence based on vicarious liability through the conduct of certain doctors. Upon a motion, the trial court granted partial summary judgment in favor of defendant, finding no such liability. Plaintiff appeals, contending that the court erred in its decision, as a jury may clearly find that the doctors involved were apparent agents of defendant. She asks that we reverse the court's decision and remand the matter for further proceedings. For the following reasons, we affirm.

## BACKGROUND

On December 31, 2003, 14-year-old Satoria was struck by a car. When plaintiff, her mother, arrived at the scene of the accident, police

officers and an ambulance were present; Satoria was lying on the ground, moaning. As Satoria was being loaded into the ambulance, emergency personnel informed plaintiff that they were taking her to defendant hospital. Before going to defendant hospital, plaintiff went to pick up another of her children. When she arrived at defendant hospital, medical treatment had already begun on Satoria. Plaintiff and other family members were directed to a waiting room.

Soon thereafter, defendant's personnel asked plaintiff to sign a consent form for Satoria entitled, "Consent for Treatment, Assignment and Release of Information for Payment." This form contained nine paragraphs and dealt with topics including the patient's consent for treatment, liability for valuables, precertification responsibilities, assignment of insurance benefits and Medicare. Further, the consent form stated, in relevant part:

> "I understand that physicians who provide professional services to me such as my attending physician and consulting physicians, are not the employees or agents of Alexian Brothers Medical Center, but they are independent contractors who will be providing their specialized services on my behalf and as such will be my employees or agents. Alexian Brothers Medical Center is not responsible for the services these physicians provide. These physician's and their employee's services will be billed separately.
>
> ***
>
> **I acknowledge that I have read this consent form (or a large print version) and have had the opportunity to ask questions.**" (Emphasis in original.)

Plaintiff's signature appears on the signature line of the form, and it is dated the same day as that upon which Satoria was treated.

The record reveals that plaintiff had made several recent trips to defendant hospital prior to December 31, 2003, and had signed the identical consent form containing the same language noted above. These dates included June 15, 1999, November 19, 2001, August 5, 2002, and November 19, 2003.

That evening, plaintiff was informed of Satoria's death. Plaintiff told defendant's staff that she wanted the ring on Satoria's finger removed and returned to her. After plaintiff signed a consent form for the ring's removal, this was done and plaintiff was allowed to see Satoria's body.

Plaintiff filed a medical malpractice complaint alleging negligence against defendant, as well as Dr. Kenneth McKee, an emergency medical physician, and Dr. Stuart Verseman, a trauma surgeon, both of whom treated Satoria. In addition to her claims that Drs. McKee and Verseman did not properly perform medical procedures, plaintiff

claimed that defendant was vicariously liable for these doctors' actions. Defendant answered the complaint by denying all allegations of agency between it and Drs. McKee and Verseman. Likewise, Drs. McKee and Verseman also denied that they were actual or apparent agents of defendant, particularly since they were not paid by defendant and were not controlled by defendant when they provided care to patients.

During her deposition in this cause, defendant asked plaintiff whether the signature on the consent form was hers. Plaintiff answered in the affirmative.

Defendant moved for partial summary judgment, arguing that there was no genuine issue of material fact regarding an agency relationship between it and Drs. McKee and Verseman. In support of its motion, defendant attached Satoria's consent form signed by plaintiff, plaintiff's deposition testimony acknowledging that the signature is hers, and a copy of the four prior consent forms plaintiff signed which were identical to Satoria's.

Plaintiff responded to defendant's motion by providing an affidavit in which she averred that, although her signature appears on Satoria's consent form informing her of the independent contractor status of the physicians at defendant hospital, she did not personally sign the document and had no knowledge of who placed her signature on it. Plaintiff also stated therein that none of the forms she signed were ever explained to her and she did not read them in their entirety. She averred that she remembered signing only a consent form for the removal of Satoria's ring, that she was never given an opportunity to ask questions about the consent forms, and that she had no knowledge that the physicians at defendant hospital were independent contractors due to her "limited education" and her state of shock at the time Satoria was hurt. Finally, she mentioned in her affidavit that she "was relying on" defendant to provide emergency treatment to Satoria.

The trial court granted defendant's motion for partial summary judgment. In its colloquy, the court first noted that while the consent form was not dispositive, it was "an important factor" in the outcome of the cause, particularly because it "explicitly states" that the doctors at defendant hospital are independent contractors. Next, the court found plaintiff's affidavit to be "internally contradictory," in that she stated her signature is on Satoria's consent form, but then stated she did not sign it. Based on this, the court reasoned that it could not "give effect to her affidavit, and in any event her affidavit may not be allowed to contradict her sworn deposition testimony." Therefore, the court concluded that, "as a matter of law," "the consent form was sufficient to inform [plaintiff] of the status of the doctors as independent

contractors, and she signed it." In addition, the court also found that plaintiff failed to provide any evidence regarding her alleged reliance that the doctors were defendant's employees. It distinguished two cases cited by plaintiff for this point, namely, *McNamee v. Sandore*, 373 Ill. App. 3d 636 (2007), and *Schroeder v. Northwest Community Hospital*, 371 Ill. App. 3d 584 (2006), and further concluded that there was insufficient evidence here to prove the necessary reliance element. Accordingly, the court held that summary judgment in favor of defendant was appropriate.

## ANALYSIS

Summary judgment is proper when the pleadings, affidavits, depositions and admissions of record, construed strictly against the moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001); accord *Purtill v. Hess*, 111 Ill. 2d 229, 240-44 (1986); *Zakoff v. Chicago Transit Authority*, 336 Ill. App. 3d 415, 420 (2002). While this relief has been called a "drastic measure," it is an appropriate tool to employ in the expeditious disposition of a lawsuit in which " 'the right of the moving party is clear and free from doubt.' " *Morris*, 197 Ill. 2d at 35, quoting *Purtill*, 111 Ill. 2d at 240. Moreover, while a plaintiff need not prove her entire cause during summary judgment, she must present some evidentiary facts to support the elements of her cause of action. See *Bellerive v. Hilton Hotels Corp.*, 245 Ill. App. 3d 933, 936 (1993). If the plaintiff fails to establish even one element of the cause of action, summary judgment in favor of the defendant is wholly proper. See *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007).

Appellate review of a trial court's grant of summary judgment is *de novo* (see *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 370 (2007); accord *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992); *Zakoff*, 336 Ill. App. 3d at 420), and reversal will occur only if we find that a genuine issue of material fact exists (see *Addison v. Whittenberg*, 124 Ill. 2d 287, 294 (1988)).

■ Pursuant to the doctrine of apparent authority, a hospital can be held vicariously liable for the negligent acts of a physician providing care at that hospital, regardless of whether the physician is an independent contractor.[1] See *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 524 (1993). However, under the principles just outlined,

---

[1]We note for the record that plaintiff has not challenged the issue of actual authority (express or implied) between defendant and Drs. McKee and Verseman on appeal, but only that of apparent authority. Indeed, the record is clear that Drs. McKee and Verseman were not employed or paid by defendant,

as well as pursuant to case law, it is well established that the burden rests with the party asserting the existence of apparent authority to prove the required legal elements of this cause of action, of which there are three. See *Gilbert*, 156 Ill. 2d at 525. In the words of our state supreme court:

> " 'For a hospital to be liable under the doctrine of apparent authority, a plaintiff must show that: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.' " *Gilbert*, 156 Ill. 2d at 525, quoting *Pamperin v. Trinity Memorial Hospital*, 144 Wis. 2d 188, 207-08, 423 N.W.2d 848, 855-56 (1988).

Accord *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 193 (2006) (reaffirming *Gilbert*'s "analytical framework" regarding apparent agency claims against hospitals); see also *Buckholtz v. MacNeal Hospital*, 337 Ill. App. 3d 163, 172 (2003) ("burden of proving the existence of an agency relationship is on the party seeking to charge the alleged principal").

■ Again, although plaintiff here was not required to prove her entire case at the summary judgment stage, she was still required to present at least a factual basis that would arguably entitle her to judgment in her favor. See *Churkey v. G.A. Rustia*, 329 Ill. App. 3d 239, 245 (2002), citing *Hindo v. University of Health Sciences/Chicago Medical School*, 237 Ill. App. 3d 453, 459 (1992). This includes all three elements of the *Gilbert* analysis. See, *e.g.*, *Churkey*, 329 Ill. App. 3d 239; see also *Bagent*, 224 Ill. 2d at 163 (failure to establish even one element of cause renders summary judgment proper); *Bellerive*, 245 Ill. App. 3d at 936. Based on the record before us, we find that plaintiff did not satisfy all the requirements of an apparent agency claim and, therefore, could not legally survive defendant's motion for summary judgment.

Beginning with the first two elements of *Gilbert*, plaintiff was required to present some evidence that defendant's or Drs. McKee and Verseman's actions created the appearance of authority and that

---

but merely had privileges to work at defendant hospital; nor did defendant exercise any control over their treatment of patients. See *Buckholtz v. MacNeal Hospital*, 337 Ill. App. 3d 163, 173-74 (2003). Therefore, even though defendant reasserts the lack of actual authority in its brief, in light of the circumstances, we find no reason to revisit that issue herein.

defendant had knowledge of or acquiesced in these; this is commonly known as the "holding out" element of apparent authority. See, *e.g.*, *Churkey*, 329 Ill. App. 3d at 243; *James v. Ingalls Memorial Hospital*, 299 Ill. App. 3d 627, 633 (1998). However, it is unmistakably clear that if plaintiff knew or should have known that Drs. McKee and Verseman were independent contractors, then defendant cannot be held vicariously liable. See *Gilbert*, 156 Ill. 2d at 522 ("[i]f a patient knows, or should have known, that the treating physician is an independent contractor, then the hospital will not be liable"); accord *Churkey*, 329 Ill. App. 3d at 243. In other words, if plaintiff was placed on notice of the independent contractor status of these doctors, "it would be unreasonable" for her to assume that they were employed by defendant and, thus, she could not sustain an apparent agency claim against defendant. *York*, 222 Ill. 2d at 202 ("under such circumstances a patient would generally be foreclosed from arguing that there was an appearance of agency between the independent contractor and the hospital").

Our courts have held that, while hospital consent forms containing an independent contractor disclaimer are not always dispositive on the issue of "holding out," they certainly are an important factor to consider. See *James*, 299 Ill. App. 3d at 633; accord *Churkey*, 329 Ill. App. 3d at 244. For example, in *James*, the mother of the minor plaintiff went to the emergency room of the defendant hospital due to problems associated with her pregnancy. She was admitted and signed a consent form stating that the physicians on staff at the defendant hospital were not employees or agents but independent contractors; the consent form also stated that, as the signatory, she had an opportunity to discuss the form and understood it. See *James*, 299 Ill. App. 3d at 629. When the plaintiff later sued the defendant hospital for the medical negligence of a certain treating physician on an apparent agency theory, the *James* court declared that while a signed consent form is not always dispositive in every case, it proved critical therein because it showed that the plaintiff knew or should have known that the physician in question was an independent contractor. See *James*, 299 Ill. App. 3d at 633 (holding that apparent agency claim could not succeed because independent contractor status was "clearly set out," thus concluding that summary judgment was proper); see also *Churkey*, 329 Ill. App. 3d at 245 ("lack of any facts showing that the [defendant] hospital 'held out' [physician] as its agent, coupled with the signed consent form clearly indicating that [physicians working there] were not hospital employees, leads us to conclude, as a matter of law, that [the plaintiff] knew or should have known that [physician] was not the hospital's agent").

As in *James*, plaintiff here signed a consent form that clearly indicated that defendant contracted with independent physicians to provide services to patients. That is, Satoria's consent form specifically used the term "independent contractors" when referring to the attending and consulting physicians and plainly explained that defendant "is not responsible for the services these physicians provide." It also described that payment for these physicians and defendant was separate. In addition, in bold print, Satoria's consent form stated that, as the signatory, plaintiff read it and had the opportunity to ask questions about it. Drs. McKee and Verseman's status, then, was "clearly set out" in the consent form, demonstrating that plaintiff knew or, at the very least, should have known, that, as a matter of law, they were independent contractors. See *James*, 299 Ill. App. 3d at 633; see also *Churkey*, 329 Ill. App. 3d at 244-45.

Plaintiff argues that, because defendant never informed her that her consent was not necessary to the continuity of Satoria's care under the "emergency exception," Satoria's consent form was inoperative and should not have been considered by the trial court. She also argues that her affidavit creates a genuine issue of material fact as to whether she knew or should have known of Drs. McKee and Verseman's independent contractor status. We disagree.

Plaintiff is correct that consent need not be obtained if an emergency arises where treatment is required to protect the patient's health and it is impossible or impractical to obtain consent from the patient or from someone responsible for her care. See *Curtis v. Jaskey*, 326 Ill. App. 3d 90, 94 (2001). And, as plaintiff points out, defendant began treating Satoria before plaintiff arrived at the hospital, as this was such an emergency. However, this does not render Satoria's consent form irrelevant, nor does it intimate, as plaintiff insists, that defendant asked her to sign it only to "conveniently create evidence" of her knowledge of the physicians' status without purposefully informing her of the emergency exception. First, as defendant notes, plaintiff cites no case law or legal precedent requiring a hospital to inform an emergency patient, like Satoria (or plaintiff), that it must continue treatment regardless of whether she or anyone on her behalf signed a consent form. Moreover, our supreme court did not remotely require anything similar when it directly addressed apparent agency in medical malpractice situations; instead, it clearly stated that, to defeat such a claim, all that was required was some evidence to show that the plaintiff knew or should have known of the physician's independent contractor status. See *Gilbert*, 156 Ill. 2d at 524-25; see also *James*, 299 Ill. App. 3d at 633; *Churkey*, 329 Ill. App. 3d at 245. In the instant cause, defendant did precisely this via the clear and

concise language in Satoria's consent form. Furthermore, there is no evidence to support plaintiff's contention that defendant manufactured the idea, at the time of treating Satoria, of having plaintiff sign what is otherwise its standard consent form relating to various topics in addition to treatment (such as release of information, liability for personal belongings, precertification responsibilities, insurance, etc.) in order to "create evidence" for a lawsuit. Accordingly, what is irrelevant here is not the consent form but, rather, the fact that defendant may not have told plaintiff that it was unnecessary for Satoria's continued treatment.

Second, we do not find that plaintiff's affidavit creates a question of fact as to whether she was informed of Drs. McKee and Verseman's independent contractor status. In *Churkey*, the plaintiff, who signed a consent form similar to the one at issue, underwent surgery at the defendant hospital; she was given the wrong kind of anesthesia and later sued the defendant on the ground that the anesthesiologist was its apparent agent. Upon questioning during her deposition, she stated that she had no memory of any of the events at the defendant hospital after checking in and leading up to her surgery. See *Churkey*, 329 Ill. App. 3d at 241. However, once the defendant moved for summary judgment, the plaintiff answered via an affidavit in which she stated that she believed before her surgery that the anesthesiologist was the defendant's employee, that she did not recall ever being told as she prepared for surgery that he was not the defendant's employee, and that she did not remember reading the consent form prior to signing it. See *Churkey*, 329 Ill. App. 3d at 242. In holding that her affidavit did not create a genuine issue of material fact to defeat summary judgment, the *Churkey* court found that there were no specific facts to support the assertions stated therein. See *Churkey*, 329 Ill. App. 3d at 245.

As in *Churkey*, we find that plaintiff's affidavit here did not create a genuine issue of material fact to defeat summary judgment, as she failed to present any specific facts to support the assertions contained therein that she had no knowledge of Drs. McKee and Verseman's independent contractor status. First, in line with the trial court, we believe plaintiff's affidavit was internally contradictory. In her affidavit, plaintiff initially states that her signature appears on Satoria's consent form, but then states that she did not sign it. Taken in their plain context and meaning, these statements are diametrically opposed.

Second, even were we to accept her assertion that her affidavit was only explanatory and not contradictory, we still cannot help but conclude that, as in *Churkey*, the statements in her affidavit are

directly at odds with those she gave first in her deposition testimony. That is, in her affidavit, plaintiff "explains" that she did not personally sign the consent form (though she does not know who did), nor did she read the form in its entirety nor did anyone tell her about it, resulting in confusion regarding the physicians' independent contractor status which was further compounded because of her "limited education" and shock at the circumstances. However, in her prior deposition, she affirmatively answered that it was her signature on the signatory line of the consent form, which clearly delineates the physicians' status and the fact that she read the form and had the opportunity to ask questions regarding it. It is well established that a party cannot create a genuine issue of material fact in an effort to defeat a motion for summary judgment by filing an affidavit that conflicts with her prior sworn testimony. See *James*, 299 Ill. App. 3d at 635 (once made, judicial admission, such as testimony from deposition, cannot be contradicted in motion for summary judgment); *Schmahl v. A.V.C. Enterprises, Inc.*, 148 Ill. App. 3d 324, 331 (1986); see also *Hansen v. Ruby Construction Co.*, 155 Ill. App. 3d 475, 480 (1987).

Also, as in *Churkey*, plaintiff here provides no specific facts to support the assertions in her affidavit. She never stated at any time in these proceedings prior to her affidavit that her "limited education" prevented her from understanding the consent form or from receiving notice of Drs. McKee and Verseman's independent contractor status, or that she did not read Satoria's consent form in full or failed to ask questions about it because she was in shock. In fact, the record undeniably demonstrates that plaintiff signed consent forms at defendant hospital, wholly identical to Satoria's, on at least four occasions prior to the incident in question—one of them only a month before Satoria's admittance. See *Churkey*, 329 Ill. App. 3d at 245 (affidavit did not create genuine issue of material fact as to whether the plaintiff knew or should have known about doctor's status); *James*, 299 Ill. App. 3d at 635 (the plaintiff's assertions in affidavit filed in response to motion for summary judgment and made after she already testified conversely in deposition did not properly create genuine issue of material fact).

Plaintiff relies principally on *McNamee* and *Schroeder* for her contentions in this respect, as she did before the trial court. However, as did the trial court, we too find that both of these cases are distinguishable and prove unsupportive of her argument that a genuine issue of material fact exists here.

In *McNamee*, the patient was taken to a hospital due to emergency concerns regarding her pregnancy. Multiple suits followed involving the patient, her husband, the hospital, the treating physician and his

employer, wherein, in part, a theory of apparent agency was raised. Submitted into evidence was a consent form dated the day the patient registered at the hospital; the consent form, which specified that attending physicians were independent contractors, bore the signature of the patient, her husband (as the responsible insurer), and a third party's initials which, as explained in an accompanying affidavit from a patient registration supervisor, were those of the registrar on duty who witnessed the patient and her husband's signatures. However, in her deposition, the patient unequivocally denied that the signature bearing her name on the form was in her or her husband's handwriting, and she testified that she did not sign the form nor did she authorize her husband to do so on her behalf. Likewise, following a motion for summary judgment, the patient submitted an affidavit wherein she again averred that the signature on the consent form was not hers. On appeal, the *McNamee* court found that there was "a factual dispute over a factor" regarding the "holding out" elements of *Gilbert. McNamee* 373 Ill. App. 3d at 651. This was because, as the court explained, although the consent form indicated the independent contractor status of the physician, the patient, "[b]oth at her deposition and in her affidavit[,] *** denied signing the form," while the hospital submitted an affidavit from the registration supervisor that a registrar had witnessed her signature. *McNamee*, 373 Ill. App. 3d at 651.

The facts in the instant case, as we have already discussed at length, are not at all similar to those of *McNamee*. Unlike the patient in *McNamee*, plaintiff here did not provide matching, unequivocal answers in her deposition and subsequent affidavit regarding her signature on Satoria's consent form. In her deposition, she affirmed it was her signature on the form—she never contended at that time that it was not or that someone else had written it. Yet, later in her affidavit, she stated that she never signed Satoria's consent form and did not know who did so on her behalf. This is far from the situation that created a question of material fact in *McNamee*.

Moreover, in *Schroeder*, the plaintiff, the executor of the decedent-patient's estate, brought suit against the defendant hospital based on vicarious liability. Following the defendant's motion for summary judgment, the plaintiff responded, in part, that a genuine issue of material fact existed regarding the "holding out" elements of *Gilbert* because the consent form at issue in the cause was confusing and ambiguous regarding the independent contractor status of the physicians and staff involved. That consent form stated that the patient's care "will be managed by your personal physician or other physicians who are not employed by [the defendant] but have privileges to care

for patients" there, yet that " '[y]our physician's care is supported by a variety of individuals employed by [the defendant]' " and that " '[y]our physician may also decide to call in consultants' " who may have privileges but may not be employed by the defendant. *Schroeder*, 371 Ill. App. 3d at 587. Based on this, the *Schroeder* court found that there was "sufficient material evidence" on the issue of whether the patient or the plaintiff knew or should have known that the physicians who treated the patient were independent contractors so as to create a question of fact. See *Schroeder*, 371 Ill. App. 3d at 593-94.

Unlike *Schroeder*, Satoria's consent form was not confusing or ambiguous in any way, especially when it came to disclosing Drs. McKee and Verseman's status. As we noted above, the form specifically used the term "independent contractors" when referring to the attending and consulting physicians at defendant hospital; it did not carve out any exceptions concerning medical privileges or other physicians called in later to assist already treating physicians. Moreover, Satoria's form plainly explained that defendant "is not responsible for the services these physicians provide" and also made clear that even in its billing practices, it remained an entity separate and distinct from any physician. Contrary to the complex and muddled consent form in *Schroeder* which raised a question of fact as to the plaintiff's knowledge, Satoria's consent form—with which plaintiff was already four-times (and quite recently) familiar—clearly set out Drs. McKee and Verseman's independent contractor status without any doubt.[2]

Therefore, because we have found that plaintiff knew or should have known that Drs. McKee and Verseman were independent contractors, she could not have satisfied the first two *Gilbert* elements of "holding out" and, thus, the trial court's grant of summary judgment in favor of defendant in this vicarious liability suit was proper.

Finally, even if plaintiff could have presented a factual basis regarding the first two *Gilbert* elements required for vicarious liability

---

[2]Plaintiff's contentions that she was somehow misled by a different consent form she signed regarding the removal of Satoria's ring and that her emotional state exacerbated the situation simply do not hold water. The consent form for the ring is not part of the record on appeal. Regardless, that form, if it was indeed signed by plaintiff, dealt only with the removal of the ring and not Satoria's care or the independent status of the physicians; plaintiff acknowledged this, as well as that the signature on the medical consent form was hers. And, while we do not mean to minimize the trauma plaintiff suffered regarding the injury and loss of her daughter, nothing in *Schroeder*, or any other case cited by plaintiff, stands for the proposition that an emotional condition, or one's educational level for that matter, without more, creates a genuine issue of material fact.

on the part of defendant hospital, we hold, as did the trial court, that, based on the circumstances before us, she failed to provide such a basis regarding the remaining *Gilbert* element of reliance.

In order to meet the third *Gilbert* element, plaintiff was required to prove that she acted in reliance upon defendant's conduct. See *Gilbert*, 156 Ill. 2d at 525. Simply put, plaintiff must have shown, via some evidence, that she "actually did rely on the apparent agency" alleged between defendant and Drs. McKee and Verseman while at defendant hospital. See *Butkiewicz v. Loyola University Medical Center*, 311 Ill. App. 3d 508, 512 (2000). Again, without this, plaintiff cannot satisfy all the requirements of an apparent agency claim and, therefore, cannot legally survive defendant's motion for summary judgment. See *Butkiewicz*, 311 Ill. App. 3d at 512-13.

Relying principally on *Monti v. Silver Cross Hospital*, 262 Ill. App. 3d 503 (1994), plaintiff argues that, because "those responsible for Satoria," namely, the emergency personnel who took Satoria to defendant hospital as well as plaintiff, who was present nearly the entire time, sought care from defendant hospital rather than from a personal physician, it is obvious that plaintiff relied on defendant to provide complete and proper care to Satoria. Again, we disagree.

In *Monti*, the plaintiff patient was taken, unconscious, to the defendant hospital by emergency personnel and was later accompanied by her husband, who spent the majority of that day at the hospital with her. When the plaintiff sued the hospital for negligent care of a doctor working there as an independent contractor, the trial court granted summary judgment for the hospital. That decision was later reversed and remanded, as the *Monti* court focused on the fact that the plaintiff was unconscious at the time of transport and what effect this had on the reliance element in a suit seeking to enforce vicarious liability. In this vein, the *Monti* court concluded that it should not matter if the patient is conscious or unconscious, and found that, on the particular circumstances before it, a question of fact existed regarding apparent agency since those responsible for the patient's care (the emergency personnel and her husband) relied on the hospital's ability to provide necessary services. See *Monti*, 262 Ill. App. 3d at 508 ("[n]either logic nor equity would be served by drawing a distinction between conscious and unconscious patients, allowing the former to recover on a theory of vicarious liability but not the latter").

In the instant cause, unlike in *Monti*, we are not dealing with a question regarding the plaintiff-patient's conscious or unconscious state and what effect this may have had on her reliance regarding the conduct of the hospital or physicians in a claim for vicarious liability. Whereas the plaintiff-patient in *Monti* was unconscious and alone at

the time she was transported to the defendant hospital and, clearly, could not decide for herself where to be treated, plaintiff here was not. Rather, plaintiff, as the minor-patient's mother, was unquestionably in charge of Satoria's care. The record reveals that plaintiff arrived on the scene of the accident before Satoria was transported; in fact, she spoke to emergency personnel before Satoria was placed in the ambulance. At that moment, and contrary to her contention, plaintiff did have the opportunity and discretion to choose which physicians would treat Satoria; yet, she did not refuse or object when emergency personnel offered to take Satoria to defendant hospital. What is more, this was not a hospital with which plaintiff was unfamiliar. Again, plaintiff had been there some four times in just the four years prior to Satoria's accident, with the last visit only one month before, and each time, plaintiff signed consent forms identical to the one she signed for Satoria that clearly and distinctly notified her that the physicians at defendant hospital were independent contractors and not agents of any kind. In line with our prior conclusions, plaintiff knew, or at the very least should have known, that the physicians at defendant hospital were independent contractors.

Based on these facts, then, plaintiff could not have relied upon the conduct of defendant or Drs. McKee and Verseman for a claim of apparent agency. Therefore, without any proof of this element, we must conclude that summary judgment in favor of defendant here was wholly proper. See *Butkiewicz*, 311 Ill. App. 3d at 512-13 (where the plaintiff did not meet his burden of establishing the reliance element of apparent agency, trial court's grant of summary judgment in favor of the defendant hospital was proper); see also *Bagent*, 224 Ill. 2d 163 (the plaintiff's failure to establish even one element of cause of action requires summary judgment).

## CONCLUSION

Accordingly, for all the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

O'MARA FROSSARD and TOOMIN, JJ., concur.