# Illinois Official Reports

## Appellate Court

---

### *Delegatto v. Advocate Health & Hospitals*, 2021 IL App (1st) 200484

---

| | |
|---|---|
| Appellate Court Caption | JAMES DELEGATTO, Individually and as Special Administrator of the Estate of Tracy A. Delegatto, Deceased, Plaintiff-Appellant, v. ADVOCATE HEALTH AND HOSPITALS, an Illinois Not-for-Profit Corporation; ADVOCATE HEALTH AND HOSPITALS, an Illinois Not-for-Profit Corporation, d/b/a Advocate Medical Group; SILVER CROSS HOSPITAL AND MEDICAL CENTER, an Illinois Corporation, d/b/a Silver Cross Hospital; ADEL MOURADI, M.D.; MAGGIE BOBAN; MELISSA ZARAGOZA; ANTHONY S. RINELLA, M.D., S.C., an Illinois Corporation, d/b/a Illinois Spine and Scoliosis Center; ANTHONY S. RINELLA, M.D.; DOUGLAS STEVENS, PA-C; ALLIED ANESTHESIA ASSOCIATES S.C.; and BORIS NULMAN, M.D., Defendants (Silver Cross Hospital and Medical Center, Defendant-Appellee). |
| District & No. | First District, Second Division<br>No. 1-20-0484 |
| Filed | August 10, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2016-L-5928; the Hon. Allen Price Walker, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Vivian Tarver-Varnado, of AMB Law Group, LLC, of Chicago, for appellant. |

Shana A. O'Grady, James M. Bream, and Debra O'Brien Daly, of L&G Law Group LLP, of Chicago, for appellees.

| Panel | JUSTICE COBBS delivered the judgment of the court, with opinion. Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment and opinion. |
|---|---|

## OPINION

¶ 1    This appeal arises from a wrongful death action premised on medical negligence filed by James Delegatto (James), in his capacity as special administrator for his wife Tracy Delegatto's (Tracy) estate against several defendants, including Silver Cross Hospital (Silver Cross). Silver Cross sought summary judgment as to the claims of vicarious liability, alleging that Anthony Rinella, M.D., and physician assistant Douglas Stevens (PA Stevens) were agents of Silver Cross. The circuit court granted the motion, and James appealed, arguing that the circuit court erred in granting Silver Cross's motion for summary judgment because Tracy had no notice that Dr. Rinella was not an agent of Silver Cross.

¶ 2    For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    The following facts are taken from the record. On June 15, 2016, James, as special administrator of the estate of Tracy, filed a 15-count complaint in the circuit court against various defendants, including Silver Cross, alleging medical negligence resulting in the death of his wife and wrongful death. His complaint was subsequently amended. As relevant here, count III of the second amended complaint alleged that Silver Cross was vicariously liable for the acts of Dr. Rinella and PA Stevens, who were agents of Silver Cross and were acting in the scope and agency of their employment. Specifically, the complaint alleged that Silver Cross "acted in a manner that would lead a reasonable person to conclude that [Dr. Rinella and PA Stevens] were employees and/or agents of [Silver Cross]" and that Silver Cross never informed Tracy that her care was being provided by nonemployees. The facts surrounding Tracy's death are as follows.

¶ 5    In 2014, Tracy was injured in a motor vehicle accident. On February 9, 2015, she had an appointment at Pain Treatment Centers of Illinois with Dr. Faris Abusharif, a pain medicine specialist, regarding her complaints of cervical spinal stenosis and cervical radiculopathy. At this point, she had undergone physical therapy and epidural steroid injections; however, her pain had not been relieved. Dr. Abusharif suggested surgery as the next option and referred her to either Dr. Rinella or Dr. Cary Templin.

¶ 6    On February 19, 2015, Tracy had a consultation with Dr. Rinella, an orthopedic surgeon, and PA Stevens. The consultation took place at the office of Dr. Rinella's private practice, Illinois Spine and Scoliosis Center (ISSC). Dr. Rinella recommended that Tracy undergo spinal surgery to alleviate her pain. At this consultation, Tracy signed two patient forms titled "ISSC Patient Registration Form" and "ISSC Authorization to Release Healthcare Information." Included in the first form was the following: "I authorize payment of medical benefits for any

- 2 -

services to me by Illinois Spine & Scoliosis Center, to be paid directly to Illinois Spine & Scoliosis Center." James accompanied Tracy to all her visits with Dr. Rinella.

¶ 7    At some point, Tracy did research to determine at which hospital the surgery should be performed. She decided that Silver Cross was the best option, as it had a good reputation and was brand new. According to James's deposition, Tracy chose Dr. Rinella because of his affiliation with Silver Cross, and she was adamant about having the surgery done there. Both Dr. Rinella and PA Stevens are independent contractors and have privileges at Silver Cross and are employed by "Anthony S. Rinella, M.D., S.C. d/b/a Illinois Spine and Scoliosis Center."

¶ 8    On February 25, 2015, Dr. Rinella signed Silver Cross's orthopedic surgery preadmission order and faxed it to Silver Cross. On March 9, 2015, Tracy went to Silver Cross to have preadmission testing conducted in accordance with Dr. Rinella's orders. While at Silver Cross, she signed a "Silver Cross Hospital Consent Form." On March 26, 2015, Tracy returned to ISSC for a follow-up surgical consultation. Also on March 26, 2015, Darlene Fabek, an employee of Silver Cross, contacted Tracy via telephone to perform a preadmission assessment. Tracy signed and initialed additional Silver Cross consent forms, one on March 28 and another March 30, 2015.

¶ 9    The consent forms signed on March 9, 2015, March 28, 2015, and March 30, 2015, are identical. The entire text of the forms is contained on a single page with five paragraph headers in bold text: "CONSENT," "HOSPITAL SERVICES," "PATIENT SELF-DETERMINATION ACT (PSDA)," "ASSIGNMENT OF INSURANCE BENEFITS," and "FINANCIAL AGREEMENT." The "HOSPITAL SERVICES" paragraph provides the following text, all in upper case and bold text:

> "I UNDERSTAND THAT ALL PHYSICIANS, NURSE PRACTITIONERS AND PHYSICIAN ASSISTANTS FURNISHING SERVICES TO ME, INCLUDING EMERGENCY DEPARTMENT, RADIOLOGISTS, ANESTHESIOLOGISTS, PATHOLOGISTS, AND THE LIKE, ARE INDEPENDENT CONTRACTORS AND ARE NOT EMPLOYEES OR AGENTS OF THE HOSPITAL. _____(initial)"
> (Emphasis omitted.)

¶ 10    Other than the text above, and the paragraph headers, no other text under any of the other paragraph headers on the form is in all upper case or bold text. Tracy's initials appear on all three forms in the space provided. Additionally, her handwritten signature appears at the bottom of all three forms attesting to the following (in bold text): "I [h]ave read this form and I am satisfied that I understand it's [*sic*] content and significance." (Emphasis omitted.)

¶ 11    Also on March 30, 2015, Tracy signed a surgical consent form giving Dr. Rinella permission to perform the necessary surgical procedure. In pertinent part, the surgical consent form stated, "I understand all physicians furnishing services to me, including anesthesiologists, radiologist[s], pathologists, physician assistant[s], nurses anesthetists, and the like are independent contractors and are not employees or agents of the hospital." Dr. Rinella, assisted by PA Stevens, performed the surgery that day at Silver Cross. Tracy was discharged two days later on April 1. A week after the surgery, on April 6, 2015, Tracy died.

¶ 12    During discovery, Dr. Rinella's deposition was taken. Regarding his relationship with Silver Cross, he stated that he did not report to anyone at Silver Cross and there was no direct supervision from Silver Cross. He stated that he had maintained a surgical schedule at Silver Cross since 2009. In 2015, the only hospital at which he had privileges was Silver Cross. He

identified a form that showed his reappointment of orthopedic clinical privileges at Silver Cross for the period of December 31, 2014, to December 31, 2016. His only role within the hospital was serving on the surgical committee. Silver Cross did not compensate Dr. Rinella for any services provided to Tracy. He stated that he was "not aware of any activity or statement or conduct by Silver Cross Hospital that held [him] out as its agent, service[,] or employee" nor did he engage in any activity in which he held himself out as an agent of Silver Cross. He described his private office as containing multiple signs bearing the ISSC brand name, including his doorway, on the wall, on informational materials, and his business cards. He also identified billing statements that specifically show that payments are to be made out to ISSC.

¶ 13    On January 28, 2020, Silver Cross filed a "Partial Motion for Summary Judgment" as to James's claims of vicarious liability against Silver Cross, in which James had alleged that Dr. Rinella and PA Stevens were its agents. Silver Cross first argued that neither Dr. Rinella nor PA Stevens were employees or actual agents of Silver Cross. On the contrary, they were independent contractors. Second, Silver Cross argued that neither of them were apparent agents of Silver Cross and that James was unable to prove any of the requisite elements for an apparent agency action against Silver Cross.

¶ 14    In his response to Silver Cross's motion, James asserted that Tracy believed Dr. Rinella and PA Stevens worked for Silver Cross, neither took any affirmative acts to inform Tracy otherwise, and she would not have consented to surgery if Dr. Rinella and PA Stevens had been unable to perform it at Silver Cross. Further, James asserted that there are disputed material facts, including whether Tracy knew or should have known that Dr. Rinella and PA Stevens were not agents of Silver Cross, whether Silver Cross acquiesced to Dr. Rinella and PA Stevens's appearance of authority, and whether the signed consent forms are dispositive on the issue of agency. Attached to the response were affidavits from Matthew and Sarah Delegatto, Tracy and James's children.

¶ 15    Matthew averred that Tracy did extensive research when deciding where her surgery should take place and that she chose Silver Cross because it was new, state of the art, and had a good reputation in the community. He further averred that Tracy referred to Dr. Rinella and PA Stevens as working at Silver Cross. Sarah's affidavit contained the same averments.

¶ 16    Silver Cross subsequently filed a reply. Therein, Silver Cross took issue with the affidavits James submitted to accompany his response, namely those of himself, Matthew, and Sarah, arguing that the affidavits consisted of conclusory, inadmissible hearsay. Silver Cross also pointed out James provided no support for his assertion of a question of fact as to whether Dr. Rinella and PA Stevens were actual agents of Silver Cross. Finally, Silver Cross argued that there was uncontroverted evidence that Dr. Rinella and PA Stevens were independent contractors and that Tracy had actual or constructive knowledge, based on the consent forms, that they were not employees or agents of the hospital.

¶ 17    The circuit court conducted a hearing on the summary judgment motion on March 6, 2020. Following the hearing, the court granted Silver Cross's motion. In its oral ruling, the court specified that, as to PA Stevens, there is "no material question of fact as to whether or not the holding-out requirement is met" and that PA Stevens was not being held out as an employee of Silver Cross. As to Dr. Rinella, the court ruled that the language in the consent forms did not create an ambiguity and that there was no evidence to indicate that Dr. Rinella was "being held out or that the hospital acquiesced to the alleged apparent agency." Also on March 6,

2020, the court granted Silver Cross's summary judgment motion as to claims of agency related to Dr. Boris Nulman. James has not appealed from that ruling.

¶ 18    This appeal followed.

¶ 19                              II. ANALYSIS
¶ 20                          A. Standard of Review
¶ 21    Summary judgment is appropriate when the pleadings, depositions, and admissions on file, taken together along with the affidavits, if any, evidence that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005 (West 2018). The purpose of summary judgment is not to try a question of fact but to determine whether one exists. *Ray v. City of Chicago*, 19 Ill. 2d 593, 599 (1960). To determine whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Although summary judgment is to be encouraged as an aid in the expeditious disposition of a lawsuit, it is a drastic measure and, therefore, should be allowed only when the right of the moving party is clear and free from doubt. *Id.*

¶ 22    When confronted with a motion for summary judgment, although the plaintiff is not required to prove his case, he must nonetheless present some evidence to support the elements of his claim. *Wallace v. Alexian Brothers Medical Center*, 389 Ill. App. 3d 1081, 1085 (2009). The plaintiff's failure to establish even a single element of his cause of action will render the grant of summary judgment in favor of the defendant appropriate. *Id.* (citing *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007)). Our review of the circuit court's grant of summary judgment is *de novo*. *Id.*

¶ 23                           B. Apparent Agency
¶ 24    James claims that the circuit court erred in granting partial summary judgment in favor of Silver Cross because, under the doctrine of apparent agency, the hospital was vicariously liable for the negligence of Dr. Rinella.[1] Ordinarily, whether an agency relationship exists is a question of fact. See *Stewart v. Jones*, 318 Ill. App. 3d 552, 560-61 (2001). If, however, there is but one conclusion that may be drawn from the undisputed facts, a court may decide this issue as a matter of law. *James v. Ingalls Memorial Hospital*, 299 Ill. App. 3d 627, 632 (1998).

¶ 25    In reviewing a claim of apparent agency involving a hospital and actions by a physician working in its facility, we look to the seminal case, *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511 (1993), and its progeny. In *Gilbert*, the hospital asserted that it could not be vicariously liable for the alleged negligent conduct of the decedent's treating physician because the physician was neither an employee nor an agent of the hospital. *Id.* at 518. The supreme court rejected the argument, noting that, under earlier decisional law, a hospital could be held liable in a medical malpractice action based on a principal-agent relationship between the hospital and the physician. *Id.* at 520-22. In discussing the "realities of modern hospital care" the court explained, in relevant part that:

_____

[1]In his briefs, James limits his arguments of apparent agency to Dr. Rinella.

- 5 -

" '[G]enerally people who seek medical help through the emergency room facilities of modern-day hospitals are unaware of the status of the various professionals working there. Absent a situation where the patient is directed by his own physician or where the patient makes an independent selection as to which physicians he will use while there, it is the reputation of the hospital itself upon which he would rely. Also, unless the patient is in some manner put on notice of the independent status of the professionals with whom [he] might be expected to come into contact, it would be natural for him to assume that these people are employees of the hospital.' " *Id.* at 521 (quoting *Arthur v. St. Peters Hospital*, 405 A.2d 443, 447 (N.J. Super. Ct. Law Div. 1979)).

¶ 26      Recognizing the applicability of apparent agency in other contexts, the *Gilbert* court held that the doctrine was equally available in the unique context of a medical malpractice action. *Id.* at 524. The court held that a hospital may be held vicariously liable under the doctrine of apparent agency for the negligent acts of a physician providing care at a hospital, "regardless of whether the physician is an independent contractor, unless the patient knows, or should have known, that the physician is an independent contractor." *Id.* Having concluded the doctrine's applicability in the context of medical malpractice claims, the court set forth the following three elements a plaintiff must plead and prove to hold a hospital liable:

" '(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.' " *Id.* at 525 (quoting *Pamperin v. Trinity Memorial Hospital*, 423 N.W.2d 848, 856 (Wis. 1988)).

¶ 27      The first element, referred to as "holding out," is satisfied if the hospital holds itself out as a provider of care without informing the patient that the care is provided by independent contractors. *Id.* The focus of the "holding out" element is whether the patient knows or should have known that the physician is an independent contractor. *Id.* at 524. The second *Gilbert* element, "appearance of authority," is frequently grouped with the "holding out" element. *Lamb-Rosenfeldt v. Burke Medical Group, Ltd.*, 2012 IL App (1st) 101558, ¶ 26 (citing *Wallace*, 389 Ill. App. 3d at 1087). The third, or the reliance element, is satisfied if the plaintiff relies upon the hospital to provide medical care rather than on a specific physician. *Gilbert*, 156 Ill. 2d at 525. The " 'critical distinction' " is whether the plaintiff sought care from the hospital itself or looked to the hospital merely as a place for his or her personal physician to provide medical care. *Id.* at 525-26 (quoting *Pamperin*, 423 N.W.2d at 857).

¶ 28      With these several principles in mind, we consider James's arguments, as set out in his brief.


¶ 29                                            C. Holding Out

¶ 30      James contends that Silver Cross acted in a manner that led Tracy to reasonably conclude that Dr. Rinella was its agent. In support, he argues that there is no evidence that Tracy knew that Dr. Rinella was not an "agent/employee" of Silver Cross and Silver Cross failed to place her on notice. Although he does not dispute that a consent form was signed by Tracy, it is his contention that consents are not dispositive on the issue of apparent agency.

¶ 31    We agree with James that consents are not dispositive. However, with respect to the holding out factor,

> "whether a patient signs a hospital consent to treatment form that contains clear and unambiguous independent contractor disclaimer language is an important factor to consider *** because it is unlikely that a patient who signs such a form can reasonably believe that her treating physician is an employee or agent of a hospital when the form contains specific language to the contrary." *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 27.

Indeed, having a patient sign a treatment consent form which expressly provides that the physicians on staff at the hospital are not employees or agents of the hospital may make proving the holding out element extremely difficult. *James*, 299 Ill. App. 3d at 633. In fact, in *Steele v. Provena Hospitals*, the court stated that if " 'the patient is in some manner put on notice of the independent status of the professionals with whom he might be expected to come into contact,' " the hospital is not vicariously liable. 2013 IL App (3d) 110374, ¶ 138 (quoting *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 182 (2006)).

¶ 32    Nevertheless, citing *York v. El-Ganzouri*, 353 Ill. App. 3d 1 (2004), *aff'd*, *Rush-Presbyterian*, 222 Ill. 2d 147, James argues that a consent form that identifies "physicians" without identifying the treating physician is not determinative. In *Rush-Presbyterian*, 222 Ill. 2d at 196, our supreme court held that the evidence presented failed to place the plaintiff on notice that Dr. El-Ganzouri, the treating physician, was an independent contractor, and not an employee, of Rush. Instead, the consent form signed by the plaintiff authorized: " 'Dr. Rosenberg and such assistants and associates as may be selected by [him] and the Rush-Presbyterian-St. Luke's Medical Center to perform the following [procedures] upon [myself].' " *Id.* at 153. Significantly, " 'the language of the consent providing that Rush could select physicians to assist in the knee surgery could reasonably be interpreted as allowing Rush to select anesthesiologists.' " *Id.* at 197 (quoting *El-Ganzouri*, 353 Ill. App. 3d at 30-31). Further, during the plaintiff's interactions with Dr. El-Ganzouri, the doctor wore either scrubs covered with the Rush logo or a lab coat that displayed the Rush emblem. *Id.* at 196. Thus, the court held that the treatment consent form signed by the plaintiff failed to alert the plaintiff that Dr. El-Ganzouri was an independent contractor. *Id.* at 196-97.

¶ 33    Significantly, in *Rush-Presbyterian*, the court emphasized that it was making no departure from its holding in *Gilbert* that if a patient knows, or should have known, that the allegedly negligent physician is an independent contractor, that patient may not seek to hold the hospital vicariously liable under the apparent agency doctrine for any malpractice on the part of the physician. *Id.* at 202. "In other words, if a patient is placed on notice of the independent status of the medical professionals with whom he or she might be expected to come into contact, it would be unreasonable for a patient to assume that these individuals are employed by the hospital." *Id.*

¶ 34    Accordingly, we find James's argument to be not only unpersuasive but not supported by the substantial body of Illinois law developed on this issue. In essence, what James seeks is a consent form, tailor-made and specific to every treating physician. Here, the consent forms signed by Tracy clearly state, "all physicians." As no physician is excluded, the only fair reading would mean that every physician with privileges at Silver Cross is included within that broad category. Notably, this same argument was raised by the plaintiff in *Prutton v. Baumgart*, 2020 IL App (2d) 190346. There, our sister court in the Second Judicial District

- 7 -

held that the subject consent form that communicated that all physicians were independent contractors did not need to specifically identify a physician by name. *Id.* ¶ 54. We agree with that holding in *Prutton*.

¶ 35    As a practical matter, were a hospital to engage in specifically naming every treating physician, we can well imagine what folly would occur if, for instance, the treating physician's name was misspelled, or if his name appeared different in form than the patient had previously or generally known it, or if there was a mistake made in identifying the correct physician. Here, "all physicians" was sufficient to put Tracy on notice that Dr. Rinella was neither an employee nor an agent of Silver Cross. Under *Gilbert*, nothing more was required by Silver Cross. Neither, we might add, was more required under *Rush-Presbyterian*.

¶ 36    Here, not only did Tracy's consent form identify "all physicians," but it also identified as independent contractors "emergency department, radiologists, anesthesiologists, pathologists, and the like" language that James additionally argues rendered the consent form ambiguous. To that point, James argues that a jury could find that Tracy reasonably believed that only the physicians identified in the particular subgroups (radiologists, anesthesiologists, pathologists, and the like) on the consent form were independent contractors and that all others were not. He maintains that the absence of Dr. Rinella's practice group, as well as inclusion of the phrase "and the like" rendered the form confusing.

¶ 37    James's argument that the practice group to which Dr. Rinella belonged was not included on the form simply lacks merit. There is no dispute that Dr. Rinella is a physician. It is axiomatic that although all medically trained physicians are not surgeons, all medically trained surgeons are physicians. The form applies to "All Physicians," and the word "including" cannot be read to narrow that broad category. It merely identifies additional types of medical practitioners who are also independent contractors. Thus, the practice group to which Dr. Rinella is associated was included within the broad category of "all physicians."

¶ 38    As an aside, it has not escaped our notice that the separate grouping of emergency departments, radiologists, anesthesiologists, and pathologists commonly appears in consent forms in more than a few cases decided by our court. See *Mizyed v. Palos Community Hospital*, 2016 IL App (1st) 142790, ¶ 8 (" 'emergency room physicians, radiologists, pathologists, anesthesiologists' "); see also *Martis v. Pekin Memorial Hospital, Inc.*, 395 Ill. App. 3d 943, 945 (2009) (" 'radiologists, pathologists, anesthesiologists' "); *cf. Gore v. Provena Hospital*, 2015 IL App (3d) 130446, ¶ 8 (" 'all doctors furnishing service to me, including emergency department physicians, radiologists, anesthesiologists, pathologists, cardiologists, surgeons, and the like' "). The recurring grouping of these medical practitioners suggests to us a commonality among them that also distinguishes them from the group generally characterized as "all physicians."

¶ 39    In our common experience, emergency room practitioners, radiologists, pathologists, and anesthesiologists play some role in the treatment of illness, but their function is generally ancillary to that of the treating physician. These medical practitioners have been generally characterized by our courts as providing hospital support services. See *Rush-Presbyterian*, 222 Ill. 2d at 194 ("If a patient has not selected a specific physician to provide certain treatment, it follows that the patient relies upon the hospital to provide complete care—including support services such as radiology, pathology, and anesthesiology—through the hospital's staff."). "Hospitals hold themselves out to the public as providing a broad range of services, including medical care and treatment. Thus, patients tend to assume that hospital physicians, such as

emergency room specialists, radiologists, anesthesiologists, and pathologists function as an integral part of the hospital enterprise." 22 Robert John Kane and Lawrence E. Singer, Illinois Practice, The Law of Medical Practice in Illinois § 30:4 (3d ed. 2021). Although these medical practitioners may have a role in the medical treatment, some may not recognize them as medical doctors or physicians. "[D]ue to the nature of their practice radiologists, pathologists, and anesthesiologists *** are often 'invisible physicians,' who are not seen by the patients and whose names the patients do not even know ***." Norman Bard and Matthew Gaier, New York Medical Malpractice § 4:22 (Jan. 2020).

¶ 40    That said, we find that the form's specific reference to these subgroups of medical practitioners creates no internal inconsistency. Neither does their reference implicitly contradict the form's earlier reference to "all physicians." In fact, earlier cases decided by our court, in which the same or similar phraseology has been included in the challenged consent form, have found the forms to be neither ambiguous nor lacking in clarity. See, *e.g.*, *Prutton*, 2020 IL App (2d) 190346, ¶ 54; *Mizyed*, 2016 IL App (1st) 142790, ¶¶ 8, 62; *Gore*, 2015 IL App (3d) 130446, ¶ 8; *Frezados v. Ingalls Memorial Hospital*, 2013 IL App (1st) 121835, ¶¶ 5, 22; *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶¶ 4, 28. We conclude that the Silver Cross form's express reference to these particular medical practitioners does no more than clarify the independent contractor status of these subgroups.

¶ 41    Further, the phrase "and the like" which follows directly after the named subgroups, does no more than generally reference medical practitioners like those within the specific referenced subgroups. See Macmillan Dictionary, https://www.macmillandictionary.com/dictionary/ british/and-the-like (last visited July 22, 2021) [https://perma.cc/7GME-4ESY] (defining "and the like" as "used for including other similar people or things in what you are saying"). Neither the specific reference nor the general "and the like" language negates or modifies the broader classification of "all physicians" in which Dr. Rinella falls.

¶ 42    As further support for his contention of Silver Cross's holding out, James argues that its consent form was misleading and inadequately informative. He cites *Spiegelman v. Victory Memorial Hospital*, 392 Ill. App. 3d 826 (2009), as apposite. In *Spiegelman*, the plaintiff presented at Victory Memorial Hospital's emergency room for treatment. *Id.* at 828. Prior to treatment, she signed a consent form consisting of nine paragraphs, two of which were the alleged source of confusion. Paragraph 3 provided that the patient was aware that during her visit to the emergency department of the hospital, " 'hospital employees will attend to my medical needs as may be necessary.' " *Id.* at 829. Paragraph 4 provided that the patient understood that " 'the Emergency Department physician and [the] attending physician are independent contractors and not agents or employees of VICTORY MEMORIAL HOSPITAL.' " *Id.*

¶ 43    As described in the court's opinion, the form in *Spiegelman* was in multipart format and contained various provisions unrelated to the independent contractor disclaimer. *Id.* at 837. Immediately preceding the paragraph containing the independent contractor disclosure was a paragraph stating that the patient is aware that hospital employees will attend to her needs. *Id.* Additionally, the signature line on the form was placed beneath a separate unnumbered paragraph concerning the release of property. *Id.* On appeal, the court held that the jury could rightfully infer that the plaintiff was confused as to which doctors were employees of the hospital and which were independent contractors. *Id.* Of particular note, while in the emergency room, the plaintiff had complained of dizziness and problems with her vision, and

there was evidence that her condition worsened rapidly. *Id.*; see also *Schroeder v. Northwest Community Hospital*, 371 Ill. App. 3d 584, 587, 594 (2006) (where the consent form provided that the patient's care would be managed by " '[his] personal physician or other physicians *who are not employed*' " by the hospital, this court held that the language could be reasonably construed to mean that his personal physician was employed by the defendant hospital (emphasis in original)).

¶ 44    Initially, we note that unlike in *Spiegelman*, there are no conflicting paragraphs in the Silver Cross consent form regarding employees and independent contractors. In fact, unlike in *Spiegelman*, text regarding independent contractors and employees appears only in the single boldface paragraph that we have set out above. Also, unlike in *Spiegelman*, Tracy was presented with and signed the same consent form on three separate occasions, and on all three occasions, she indicated her satisfaction in understanding the consent and its significance. Additionally, the signature line was neither obscured nor hidden near unrelated text. Although the signature line appears at the end of the form, there was space provided just to the right of the employer-agency disclaimer on which Tracy initialed, signifying her review of the same. Finally, unlike in *Spiegelman*, there is nothing in the record to indicate that when Tracy initialed and signed the consent form that she was dizzy or confused on any of the three separate occasions. In sum, we find *Spiegelman* inapposite.

¶ 45    We have considered whether any of the additional provisions in the consent form either altered or negated the one provision in the consent form that defined the employment relationship between Dr. Rinella and Silver Cross. Having reviewed the form, we conclude that they do not. Moreover, that other provisions in the form might have lacked clarity or raised questions regarding the particular subject matter included therein, a matter about which we express no opinion, is not relevant on the issue of apparent agency, and we need not consider those provisions here. We would again point out, however, that Tracy acknowledged, via her signature on multiple occasions, that she was satisfied that she understood the content and significance of the consent form.

¶ 46    Neither are we persuaded by James's argument that the Silver Cross form was inadequate because it could have included more specificity. See *Churkey v. Rustia*, 329 Ill. App. 3d 239, 244-45 (2002) (hospital was not liable under apparent agency doctrine where patient signed consent form that indicated that the hospital contracted with independent groups of physicians, specified the physician's group's name, and stated that independent physicians or groups were not hospital employees). It is sufficient that the consent form set forth the relationship between the physician and the hospital with enough clarity that the consenting patient is on notice.

¶ 47    In sum, we find no ambiguity in the Silver Cross consent form, and James has not succeeded in citing any. In our view, the consent form, which Tracy signed on more than on one occasion, was clear and unambiguous. Thus, James has failed to satisfy the first element of an apparent agency claim, holding out, rendering summary judgment appropriate. See *Wallace*, 389 Ill. App. 3d at 1085-86.

¶ 48                                    D. Apparent Authority

¶ 49    Notwithstanding that Tracy signed the consent form identifying "all physicians" as independent contractors, James contends that Dr. Rinella acted in a manner that led her to "reasonably conclude" that he was an "agent/employee" of Silver Cross and that Silver Cross acquiesced in that conduct. With respect to Dr. Rinella's conduct, he argues that he "could not

recall any indicia" of Dr. Rinella's purported branding, and had there been evidence of the same, it would have been attached as an exhibit to Silver Cross's motion for summary judgment. Further, he maintains that there is "competing testimony" regarding Dr. Rinella's branding efforts, thus creating a question of credibility which a jury should be permitted to answer.

¶ 50     We note here, as we did earlier, that generally, the holding out element and the apparent authority element are treated as one. See *Lamb-Rosenfeldt*, 2012 IL App (1st) 101558, ¶ 26 (citing *Wallace*, 389 Ill. App. 3d at 1087). James has failed to offer sufficient evidence on the holding out element. Thus, we could end our analysis here. However, as James has set forth these additional arguments separate from his holding out claims, in the interest of completeness, we will address them.

¶ 51     Contrary to James's assertions, included in the record as exhibits are the "ISSC Patient Registration Form," which identifies ISSC as the entity to whom payment for medical benefits were to be paid and which was signed by Tracy on February 19, 2015. Additionally, the "Authorization to Release Healthcare Information" bore the ISSC logo in the top left corner and was also signed by Tracy on February 19, 2015. In addition to these exhibits, Dr. Rinella's deposition testimony reveals a practice independent of oversight or control by Silver Cross. Facts taken from the record show that, other than for purposes of the surgical procedure, Tracy was seen at Dr. Rinella's office and not at the hospital. Appointments with Dr. Rinella were made by calling Dr. Rinella's office and not the hospital. Dr. Rinella testified that Silver Cross exercised no authority or supervisory oversight over his practice. Tracy's referral to Dr. Rinella occurred as a result of her treatment by Dr. Abusharif and not based on any advertisement either by Silver Cross or Dr. Rinella concerning his affiliation with the hospital. Additionally, nothing in the record suggests even that Dr. Abusharif was affiliated with the hospital. In this case, the surgeon of Tracy's choice, Dr. Rinella, and the hospital of her choice, Silver Cross, happened to enjoy a relationship. That Tracy elected to proceed with Dr. Rinella as her surgeon because of his affiliation with Silver Cross is not evidence of apparent authority, especially in the face of a consent form which clearly defined the relationship as one of independent contractor.

¶ 52     Regardless, the purpose of a motion for summary judgment is to determine whether a triable question of fact exists, not to try a question of fact. *Pielet v. Pielet*, 2012 IL 112064, ¶ 53. "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). Material facts are those facts that might affect the outcome of the case under the applicable substantive law. *GreenPoint Mortgage Funding, Inc. v. Hirt*, 2018 IL App (1st) 170921, ¶ 17.

¶ 53     Material to the outcome of this case is whether Silver Cross provided notice to Tracy that Dr. Rinella was an independent contractor. Even accepting that Dr. Rinella's office space was barren and that there was no signage on the door, no business cards bearing the name of his practice, and no support staff to receive phone calls or visitors at his office, on the facts in this case, the absence of those things could not defeat the effect of the three signed Silver Cross consent forms or, we might add, the surgical consent form, which contained the same language and was also signed by Tracy.

¶ 54     We pause momentarily merely to state the obvious. Without signage on Dr. Rinella's door or support staff in Dr. Rinella's office to receive calls and visitors, a patient would likely not know whether he or she was in the right place, seeing the right doctor, or receiving the right treatment at the scheduled time. Moreover, and although we find it incredible, that James never saw any evidence of branding does not mean that Tracy saw none. Finally, given the forms regarding billing and treatment, there is no expectation that Dr. Rinella would have needed to state the obvious.

¶ 55     To defeat a claim of vicarious liability, all that was required of Silver Cross was evidence that Tracy had either actual or constructive notice of Dr. Rinella's status as an independent contractor. See *Mizyed*, 2016 IL App (1st) 142790, ¶ 58. The consent forms provided to Tracy by Silver Cross that she signed, not once, but on three separate occasions and that clearly and unambiguously informed every signatory that "all physicians" were independent contractors were sufficient to put Tracy on notice of Dr. Rinella's relationship to Silver Cross. Further, it has long been settled that absent fraud, the act of signing a document evidences the signer's knowledge of its contents. *Id.* ¶ 54. Here, on each of the three identical consent forms, Tracy acknowledged by her signature that she was satisfied that she understood what she was signing. Clearly, Tracy had notice of Dr. Rinella's status. On this record, there is not one scintilla of evidence that Dr. Rinella acted in any manner that would lead Tracy to reasonably conclude that he was either an agent or an employee of Silver Cross.

¶ 56     As part and parcel of his apparent agency argument, James contends that Silver Cross had knowledge of Dr. Rinella's "appearance of authority" and acquiesced to that appearance. In support, James asserts the following: (1) there is no evidence that Dr. Rinella took any steps to place Tracy on notice that he was not an agent of Silver Cross, (2) Dr. Rinella never testified that he informed Tracy that he was not an agent or employee of Silver Cross, and (3) there is no evidence of branding of Dr. Rinella's practice.

¶ 57     Obviously, if Dr. Rinella gave no appearance of Silver Cross's apparent authority, Silver Cross could not have acquiesced in that appearance. Having found no evidence in the record that Dr. Rinella gave the appearance of authority, we necessarily conclude that Silver Cross did not acquiesce.

¶ 58                                             E. Reliance

¶ 59     Having found that neither the holding out nor apparent authority elements have been met, we need not address the reliance element. See *Frezados*, 2013 IL App (1st) 121835, ¶ 25 (recognizing that "[b]ecause we conclude that plaintiff has failed to raise a factual question as to the 'holding out' element of his cause of action, we need not determine whether there is evidence going to show plaintiff's justifiable reliance" (citing *Bagent*, 224 Ill. 2d at 163)).

¶ 60                                             III. CONCLUSION

¶ 61     Based on our review of the record, we find no material issue of fact as to whether Silver Cross held out Dr. Rinella as either its agent or employee. Here, the question is resolved, without more, by the consent form that clearly and unambiguously informed Tracy that "all physicians" were independent contractors and not employees of the hospital. Accordingly, and for the reasons stated, we affirm the judgment of the circuit court.

¶ 62     Affirmed.