2022 IL App (2d) 210411-U
No. 2-21-0411
Order filed March 21, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CHRISTOPHER DIX, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 15-L-495 |
| | ) | |
| RUSH-COPLEY MEDICAL CENTER, INC., | ) | Honorable |
| | ) | James R. Murphy, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices McLaren and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The trial court properly struck those portions of plaintiff's affidavit attached to his response in opposition to defendant's motion for summary judgment that were inconsistent with plaintiff's previously proffered sworn testimony; (2) the amended affidavit of defendant's general counsel was properly considered as admissible evidence for the purpose of summary judgment; and (3) the trial court properly granted defendant hospital summary judgment on plaintiff's medical battery claim, as plaintiff raised no genuine issue of material fact as to whether the attending physicians were the hospital's employees, actual agents, or apparent agents: the hospital's disclosure form, which plaintiff signed, clearly indicated that the attending physicians were not.

¶ 2    Plaintiff, Christopher Dix, filed a *pro se* third-amended complaint against defendant, Rush-Copley Medical Center, Inc. Plaintiff alleged that defendant was vicariously liable for a medical

battery committed by Dr. Donald P. Prentiss, Jr., and Dr. Cornelius K. Smith when a catheter was inserted in plaintiff's body during an appendectomy. Defendant moved for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2020)), asserting that Drs. Prentiss and Smith were not its employees or agents (actual or apparent). The trial court granted defendant's motion. Plaintiff now appeals *pro se*, arguing that the trial court improperly granted summary judgment in favor of defendant because there existed a genuine issue of material fact as to whether Dr. Prentiss and Dr. Smith were employees or agents of defendant. Plaintiff also argues that the trial court erred in (1) striking portions of the affidavit attached to his response in opposition to defendant's motion for summary judgment and (2) refusing to strike the amended affidavit of defendant's vice president of legal affairs and general counsel, which was attached to defendant's motion for summary judgment. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4      The following is derived from the pleadings, depositions, admissions, and affidavits on file. On March 19, 2012, plaintiff presented to an immediate-care facility complaining of abdominal pain. Following orders given to him at the immediate-care center, plaintiff went to defendant's outpatient department for diagnostic imaging. Plaintiff was diagnosed with acute appendicitis and transferred to defendant's emergency room to undergo an appendectomy. The appendectomy was performed by Dr. Prentiss. During the procedure, Dr. Prentiss unsuccessfully attempted to insert a Foley catheter. Dr. Smith, a urologist, was eventually consulted to insert a Coude catheter.

¶ 5      Plaintiff's third-amended *pro se* complaint named only defendant and consisted of one count of medical battery. That count alleged that despite plaintiff "explicitly inform[ing] [defendant's] nurses and support staff that he did not want a urinary catheter inserted into his

body," Dr. Prentiss and Dr. Smith catheterized him without obtaining his consent. Plaintiff further alleged that Dr. Prentiss and Dr. Smith injured his urethra while attempting to insert the catheter, thereby causing him to seek further medical treatment to repair damage to his urinary tract. Plaintiff asserted that defendant was vicariously liable for the medical battery of "its agents and apparent agents," Dr. Prentiss and Dr. Smith, in that defendant "[p]ermitted [the physicians] to perform medical procedures on [him] which [he] expressly refused to consent."

¶ 6    Defendant answered the third-amended complaint and moved for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2020)). In its motion for summary judgment, defendant acknowledged that plaintiff presented to its facility on March 19, 2012, where he underwent an appendectomy performed by Dr. Prentiss. Defendant also acknowledged that, during the procedure, the need for a catheter arose, so Dr. Smith was consulted. Defendant asserted that when plaintiff arrived at the emergency room, he signed a single-page form entitled "Disclosure of Physician Employment Status" (Disclosure). The first paragraph of the Disclosure reads:

> "Thank you for choosing Rush-Copley Medical Center and Copley Memorial Hospital for your health care needs. Because you may receive medical services from unfamiliar or unseen physicians, we believe it is important to help you understand the employment status of these physicians. Physicians are either employed by Copley Memorial Hospital, Inc. or Rush-Copley Medical Group NFP, or they are independent physicians. Independent physicians have been granted privileges to use the hospital's facilities for the care and treatment of their private patients. You will receive a separate bill for the services provided by independent physicians."

The second paragraph of the Disclosure is titled "Non-Employed Hospital-Based Physicians" and reads:

"Physicians providing Emergency Medicine (Emergency Department, Express Care and Convenient Care), Neonatology, Radiology, Anesthesiology/Pain Management and Pathology medical services are not agents or employees of Rush-Copley Medical Center, Inc., Rush-Copley Medical Group NFP or Copley Memorial Hospital, Inc. These physicians are employees of one of the following: EMpact Emergency Physicians, LLC (Emergency Medicine); Advocate Medical Group (Neonatology); Valley Imaging Consultants, LLC (Radiology); Guardian Anesthesia Associates, SC (Anesthesia/Pain Management); or Pathology Associates of Aurora, LLC (Pathology)."

¶ 7 Following the first two paragraphs is the heading "Employed Physicians," under which is printed, "Physicians listed below are either employees of Copley Memorial Hospital, Inc. or Rush-Copley Medical Group NFP." There follows a list in alphabetical order of 52 physicians. Neither Dr. Prentiss nor Dr. Smith are on the list. Immediately under the list, the form continues:

"\_\_\_\_ (Initials) I understand that if my physician is **not** listed above, then he or she is **not** an agent or employee of Rush-Copley Medical Center, Inc., Rush-Copley Medical Group FNP, or Copley Memorial Hospital, Inc.

**I have read and understand this entire form. Any questions I had about this form and the important information contained in it have been answered to my satisfaction.**" (Emphasis in original.)

Plaintiff's initials appear in the designated space and his signature is on the Disclosure. The Disclosure bears a handwritten date of March 19, 2012, and a handwritten time of "1433."

¶ 8    Attached to defendant's motion for summary judgment were various documents, including: (1) the affidavit of Ryan Asmus, its vice president of legal affairs and general counsel; (2) a transcript of plaintiff's discovery deposition, taken on December 18, 2019; (3) plaintiff's answers to a request to admit facts and genuineness of documents submitted by defendant, file stamped December 11, 2020; and (4) the discovery deposition of Dr. Smith, taken on September 4, 2020.

¶ 9    As pertinent here, Asmus's affidavit stated as follows. Starting in 2011, Asmus personally created and implemented the use of the Disclosure. The Disclosure alerts and educates patients as to the employment status of physicians providing medical services at defendant's facilities. The Disclosure "is one of the very first forms presented and explained to patients by the registration staff." On March 19, 2012, both Dr. Prentiss and Dr. Smith were independent physicians employed by Dreyer Medical Clinic, which was later bought by Advocate Medical Group. Defendant has never held out to the public or plaintiff that either Dr. Prentiss or Dr. Smith were agents or employees of defendant. Defendant took unique steps through its use of the Disclosure to ensure plaintiff was fully informed about the independent employment status of Dr. Prentiss and Dr. Smith. When plaintiff arrived at defendant's facility on March 19, 2012, he executed the Disclosure at 2:33 p.m. The Disclosure did not list Dr. Prentiss or Dr. Smith as an employee physician. Plaintiff initialed that he understood that if a physician was not specifically named and listed as being employed, "then he or she is **not** an agent or employee of [defendant]." (Emphasis in original.)

¶ 10    As part of plaintiff's discovery deposition, defendant questioned plaintiff at length about the forms he reviewed and signed throughout his treatment. Plaintiff had a difficult time remembering which forms and how many forms he signed upon his admission. For example, plaintiff testified that he "would be guessing" when asked if he signed more than one form upon

admission. When asked moments later if the only form he recalled signing was the "one" upon admission, he stated, "That's the one I remember. If I see a form, I can tell you if it is my signature." Plaintiff did not identify or describe which "one" form he remembered signing, but at the deposition, 13 separate forms signed by plaintiff throughout his medical treatment were discussed. Plaintiff disputed the authenticity of his signature on only one of these documents—the Consent for Anesthesia or Pain Management Services form.

¶ 11    Defendant submitted a "Request to Admit Facts and Genuineness of Documents to Plaintiff." Inquiries seven through nine concerned "Exhibit C" and provided as follows:

"7. Admit or deny that Exhibit C is a disclosure of physician employment status;

8. Admit or deny that Exhibit C contains the Plaintiff's signature;

9. Admit or deny that Plaintiff signed Exhibit C[.]"

In his answers to the above inquiries, plaintiff admitted that Exhibit C is titled "Disclosure of Physician Employment Status." He also admitted that Exhibit C contains his signature and that he signed Exhibit C. In response to inquiry nine, plaintiff further stated that "at the time he signed [the Disclosure] it did not contain the handwritten time nor [*sic*] did the Plaintiff write the time on [the Disclosure]." In his answers, plaintiff also denied that he signed the Consent for Anesthesia or Pain Management Services form.

¶ 12    During his deposition testimony, Dr. Smith initially stated that in March 2012, he was working for "Advocate." He later stated that he was "an employee of Dreyer Medical Group which [was] sold to Advocate and became Advocate Medical Group or Advocate Dreyer." He also stated that he had surgical privileges at various hospitals, including defendant's facility. However, Smith stated that he was not an employee of defendant in March 2012, has never been an employee of

defendant, has never received a paycheck from defendant, and has never received a W2 form from defendant.

¶ 13    Defendant's motion for summary judgment argued as follows. Generally, a hospital is not liable for the negligence of a physician who is not its employee or agent. A plaintiff who seeks to hold a hospital vicariously liable for a physician's negligence must prove actual or apparent agency. Dr. Prentiss and Dr. Smith were not employees or actual agents of defendant. They were employed by Dreyer and merely held medical staff privileges at defendant's facilities, as shown by Asmus's affidavit and Smith's deposition testimony. Thus, to hold defendant liable, plaintiff would have to rely on apparent agency.

¶ 14    Defendant continued that to establish an apparent-agency relationship, a plaintiff must prove that (1) the hospital acted in a manner that would lead a reasonable person to conclude that the physician was an employee or agent of the hospital; (2) if the physician's acts created the appearance of authority, the hospital knew of and acquiesced in them; and (3) the plaintiff acted in reasonable reliance on the conduct of the hospital. *Gilbert v. Sycamore Memorial Hospital*, 156 Ill. 2d 511, 525 (1993). Defendant contended that plaintiff could not satisfy either of the first two *Gilbert* criteria, known collectively as " 'holding out.' " *Gilbert*, 156 Ill. 2d at 525. The Disclosure had unambiguously informed plaintiff that Dr. Prentiss and Dr. Smith were not employees or agents of defendant. By signing the Disclosure, plaintiff acknowledged that fact. Defendant also contended that plaintiff could not meet the reliance element of *Gilbert* as there was no evidence that he had sought treatment at defendant's facility because of its reputation or because of any advertisements defendant made about its physicians. Instead, plaintiff was simply following the orders of the attending physician, who recommended emergency surgery based on the results of plaintiff's diagnostic scans earlier that day.

¶ 15    Plaintiff filed a response to defendant's motion to which he attached his own affidavit. In the affidavit, plaintiff asserted that he did not go to defendant's facility to seek treatment from any particular physician. He further stated that prior to his arrival at defendant's facility, he did not know any physicians who worked there, he did not have a consultation with Dr. Smith, and he was unaware that Dr. Smith would take part in his medical treatment. In paragraphs five and six of the affidavit, plaintiff asserted as follows:

> "5. At no time prior to my surgery was I provided with a copy of Rush-Copley's 'Disclosure of Physician Employment Status' form.

> 6. While heavily medicated after my surgery at Rush-Copley, I recall briefly reviewing and signing a 'Disclosure of Physician Employment Status' form, but at the time, it did not contain a handwritten time stamp."

¶ 16    Based primarily on the statements in his affidavit, plaintiff's response argued that defendant lacked sufficient information to claim that Dr. Prentiss and Dr. Smith were not its employees, actual agents, or apparent agents. Plaintiff claimed that he could "easily prove" the "holding out" elements because the evidence of record established that he was not informed prior to surgery that his care would be provided by independent contractors. Plaintiff also asserted that he could prove justifiable reliance. Plaintiff argued that the third element is satisfied " 'if the patient relies upon the hospital to provide complete emergency room care, rather than upon a specific physician.' " *Scardina v. Alexian Brothers Medical Center*, 308 Ill. App. 3d 359, 364 (1999) (citing *Gilbert*,156 Ill. 2d at 525). Plaintiff argued that he satisfied the third criteria because he was relying on defendant "for his complete medical care."

¶ 17    Plaintiff also argued that Asmus's affidavit did not comply with Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013). Plaintiff disputed statements in Asmus's affidavit that the Disclosure

"is one of the very first forms presented and explained to patients by the registration staff" and that plaintiff signed the Disclosure at 2:33 p.m. Plaintiff also disputed Asmus's personal knowledge of the employment status of Dr. Prentiss and Dr. Smith.

¶ 18    Defendant filed a reply to plaintiff's response and a motion to strike the affidavit plaintiff attached to his response in opposition to defendant's motion for summary judgment. In its reply in support of its motion for summary judgment, defendant, citing Asmus's affidavit, the Disclosure, and Dr. Smith's deposition testimony, asserted that there was no evidence that either Dr. Prentiss or Dr. Smith was its employee or actual agent. Similarly, defendant reiterated that there was no evidence that Dr. Prentiss or Dr. Smith were apparent agents of defendant because defendant never "held out" the physicians as its agents and plaintiff failed to establish that he justifiably relied on any acts or conduct of defendant.

¶ 19    In the motion to strike plaintiff's affidavit, defendant argued that plaintiff's affidavit violated Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) for two reasons. First, plaintiff's affidavit was in improper form. Second, plaintiff's affidavit contradicted testimony he provided at his deposition and in his answers to defendant's request to admit facts and genuineness of documents. Concerning the second point, defendant argued that, for the first time in over six years of litigation, plaintiff asserted in his affidavit that the Disclosure was signed after the medical procedure was performed and while he was "heavily medicated." Defendant contended that these allegations contradicted plaintiff's prior deposition testimony on this topic. In this regard, defendant maintained that plaintiff never previously raised any objection to the authenticity of the Disclosure or to the time stamp appearing on the form and nothing in his testimony or answers suggested that his signature was obtained after his surgical procedure or while he was "heavily medicated."

¶ 20     Plaintiff subsequently filed a motion to strike Asmus's affidavit pursuant to Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013). Plaintiff's motion reiterated the claims made in his response to defendant's motion for summary judgment that Asmus lacked personal knowledge of the matters to which he attested. Plaintiff also argued that the affidavit contained unsupported assertions, opinions, and conclusions.

¶ 21     Defendant filed a response to plaintiff's motion to strike Asmus's affidavit and a reply in support of its motion to strike plaintiff's affidavit. In its response to plaintiff's motion to strike Asmus's affidavit, defendant moved to withdraw Asmus's affidavit and file an amended affidavit. Defendant stated that it was not filing the amendment because plaintiff's motion to strike was "credible or legally accurate." Rather, it was being filed "in the interest of judicial economy and efficiency and to avoid future attacks and make a more perfect record for [the] Court's ruling." As pertinent here, Asmus's amended affidavit stated as follows. Starting in 2011, Asmus personally created and implemented the use of the Disclosure. The Disclosure alerts and educates patients as to the employment status of physicians providing medical services at defendant's facilities. The Disclosure "is one of the very first forms presented and explained to patients by the registration staff." On March 19, 2012, both Dr. Prentiss and Dr. Smith were independent contractors/physicians. Neither Dr. Prentiss nor Dr. Smith has ever been employed by defendant or received a paycheck as an employee of defendant. When plaintiff underwent his procedure on March 19, 2012, neither Dr. Prentiss nor Dr. Smith was listed as an employee physician on the Disclosure. As independent physicians on defendant's medical staff, Dr. Prentiss and Dr. Smith would have to provide proof of insurance. Attached to Asmus's amended affidavit were certificates of liability insurance for both physicians indicating that they were insured through Dreyer Medical Group, Ltd., at the time of the alleged occurrence.

¶ 22    Plaintiff filed a reply to defendant's response in opposition to his motion to strike Asmus's affidavit. Plaintiff argued that Asmus's amended affidavit did not comply with Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013). Plaintiff requested the court to strike the amended affidavit or deny leave to file the amended affidavit. Plaintiff also argued that defendant never before tendered the certificates of liability insurance, and they should therefore be stricken as a discovery abuse.

¶ 23    The trial court granted defendant's motion for summary judgment. The court found that it was "an undisputed material question of fact that the physicians were not employed by or actual agents of defendant." Further, the court determined that there was no evidence that defendant "held out" Dr. Prentiss or Dr. Smith as an agent or that defendant acted in a manner that would lead a reasonable person to conclude that the physicians were its employees or agents. Additionally, the court concluded that there was no evidence to lead a reasonable person to conclude that defendant had knowledge of acts that created the appearance of authority of Dr. Prentiss or Dr. Smith and that defendant had acquiesced as to those acts. Finally, the court stated that there was no evidence that plaintiff relied on any representations by defendant. The court also granted defendant's motion to strike paragraphs five and six of plaintiff's affidavit because of new factual assertions therein that contradicted plaintiff's prior testimony and admissions. The court declined to strike Asmus's amended affidavit, finding that amended affidavit cured any objections to the "form or personal knowledge of *** Asmus about the non-employment of Dr. Prentiss or Dr. Smith by [defendant]." The court also found that an objection regarding Asmus's knowledge of when plaintiff signed the Disclosure was not material to the question of actual or apparent agency. This timely appeal by plaintiff followed.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, defendant raises three issues. He argues that summary judgment in favor of defendant was erroneous because genuine issues of material fact remained as to whether defendant was liable for the negligence of Dr. Prentiss and Dr. Smith. Plaintiff also argues that the trial court erroneously struck portions of the affidavit attached to his response to defendant's motion for summary judgment and that the trial court should have stricken Asmus's amended affidavit.

¶ 26                                    A. Standard of Review

¶ 27    "The purpose of summary judgment is not to try an issue of fact, but rather to determine whether one exists." *Mydlach v. DaimlerChrysler Corp.*, 226 Ill. 2d 307, 311 (2007). Summary judgment is proper when the pleadings, depositions, and admissions on file, along with any affidavits, establish that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020); *Gilbert*, 156 Ill. 2d at 517-18; *Talerico v. Village of Clarendon Hills*, 2021 IL App (2d) 200318, ¶ 18. A court ruling on a summary judgment motion must construe the evidence strictly against the movant and liberally in favor of the opponent. *Gilbert*, 156 Ill. 2d at 518. Although a plaintiff is not required to prove his case at the summary judgment stage, he or she must present some sort of factual basis that would arguably entitle him or her to judgment. *Connor v. Merrill Lynch Realty, Inc.*, 220 Ill. App. 3d 522, 528 (1991). We review *de novo* a grant of summary judgment. *Mizyed v. Palos Community Hospital*, 2016 IL App (1st) 142790, ¶ 35.

¶ 28    In general, we review a trial court's decision on a motion to strike an affidavit for an abuse of discretion. *U.S. Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 18. However, when a trial court rules on a motion to strike an affidavit in conjunction with a motion for summary judgment, we review the court's ruling on the motion to strike on a *de novo* basis. *National Tractor Parts, Inc. v. Caterpillar Logistics, Inc.*, 2020 IL App (2d) 181056, ¶ 73; *U.S. Bank, National*

*Ass'n*, 2014 IL App (1st) 121759, ¶ 18. Moreover, when a court rules on a motion to strike, only the "tainted portions" of the affidavit should be stricken and any remaining portions that satisfy Rule 191(a) should be saved. *Murphy v. Urso*, 88 Ill. 2d 444, 462-63 (1981).

¶ 29                                   B. Affidavits

¶ 30    We first address plaintiff's arguments addressed to the trial court's rulings on the affidavits. Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) provides, in pertinent part, as follows:

> "Affidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

In the summary judgment context, affidavits serve as a substitute for trial testimony. *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 21. However, "[a] party may not create a genuine issue of material fact by taking contradictory positions, nor may he remove a factual question from consideration just to raise it anew when convenient." *Chmielewski v. Kahlfeldt*, 237 Ill. App. 3d 129, 132 (1992); see also *Morris v. Margulis*, 197 Ill. 2d 28, 37 (2001) ("[A] party's later submission of an affidavit inconsistent with that party's deposition testimony will not raise a disputed issue of fact to prevent the entry of summary judgment"). Thus, while a witness's affidavit "may expand and clarify opinions *** and uncertain statements made in a prior deposition," the witness may not contradict deliberate testimony. *Wehde v. Regional Transportation Authority*, 237 Ill. App. 3d 664, 683 (1992). The policy behind this rule is that once a party has given sworn

testimony, he should not be allowed to commit perjury and change his testimony so as to avoid the consequences of his prior testimony. *Smith v. Ashley*, 29 Ill. App. 3d 932, 935 (1975). With these principles in mind, we turn to the affidavits at issue.

¶ 31                                    1. Plaintiff's Affidavit

¶ 32     Plaintiff first argues that the trial court erroneously struck paragraphs five and six from his affidavit in opposition to defendant's motion for summary judgment. According to plaintiff, the fact that he testified that he did not know exactly how many documents he signed while a patient at defendant's facility does not foreclose him from testifying about when he signed any particular document and his state of mind at the time. Defendant responds that the trial court properly struck paragraphs five and six from plaintiff's affidavit because they contradict plaintiff's sworn testimony offered on multiple occasions. In particular, defendant contends that at no point prior to his affidavit did plaintiff contest the authenticity of the Disclosure. We agree with defendant.

¶ 33     The Disclosure contains the signature of a "Christopher Dix" and bears a handwritten date of March 19, 2012, and a handwritten time of "1433" or 2:33 p.m.[1] At his deposition, plaintiff had a difficult time remembering which forms and how many forms he signed upon his admission. Plaintiff testified that he "would be guessing" when asked if he signed more than one form upon admission. He subsequently stated that if he sees a form, he can tell if it contains his signature. Plaintiff was presented with 13 separate forms signed by plaintiff throughout his medical treatment at defendant's facility. Plaintiff disputed the authenticity of his signature on only one of these documents—the Consent for Anesthesia or Pain Management Services form. Almost one year after his deposition, plaintiff submitted answers to defendant's requests to admit facts and genuineness of documents. In his answers, plaintiff again denied signing the Consent for

_____

[1] The parties do not dispute that 2:33 p.m. was prior to the time of plaintiff's surgery.

Anesthesia or Pain Management Services form, but admitted signing the Disclosure. Plaintiff also stated in his answers that, at the time he signed the Disclosure, "it did not contain the handwritten time nor did the Plaintiff write the time on [the Disclosure]." Subsequently, in his response in opposition to defendant's motion for summary judgment, plaintiff offered an affidavit in which he recalled signing the Disclosure after his surgery while "heavily medicated."

¶ 34    Based on this record, paragraphs five and six of plaintiff's affidavit were properly stricken because the statements therein are inconsistent with plaintiff's prior deposition testimony and his answers to defendant's request to admit facts and genuineness of documents. At his deposition, plaintiff admitted that he "would be guessing" as to how many documents he signed upon his admission and he raised no objection to the circumstances surrounding the signing of any form aside from the Consent for Anesthesia or Pain Management Services form. Further, in his answers to defendant's request to admit facts and genuineness of documents, plaintiff admitted signing the disclosure. Although he stated in his answers that, at the time of signing, the document did not contain a time stamp and he did not write the time on the Disclosure, we would not expect a time designation to appear on the document prior to signing. More importantly, plaintiff did not object to the time of the signature or indicate that he was in an altered mental state when he signed the Disclosure. In his affidavit, however, and despite never previously objecting to any aspect of the Disclosure other than to the presence of the time stamp, plaintiff recalled that he signed the Disclosure *after* the procedure and furthermore that he did so while he was in an altered mental state. Because the statements plaintiff made in paragraphs five and six of his affidavit are inconsistent with his prior testimony and admissions, they were properly stricken. See *Burton v. County of Jackson*, 246 Ill. App. 3d 677, 681 (1993) (noting that affidavit testimony that

contradicted earlier deposition testimony that the plaintiff had no recollection as to what happened was insufficient to create a factual dispute for purposes of summary judgment).

¶ 35     In so holding, we note that plaintiff cites to *Lassai v. Holy Cross Hospital*, 224 Ill. App. 3d 330 (1991), in support of his position. The *Lassai* court held that a negative response to broad questions regarding whether the deponent could recall "anything else" that involved the care and treatment of his father at the defendant hospital did not rise to the level of an unequivocal admission so as to constitute a contradiction to his statements in a subsequent affidavit. *Lassai*, 224 Ill. App. 3d at 334. In this case, plaintiff was not presented with the type of open-ended questions at issue in *Lassai*. Thus, defendant's reliance on *Lassai* is unavailing.

¶ 36                                    2. Asmus's Amended Affidavit

¶ 37     Plaintiff also asserts that Asmus's amended affidavit should have been stricken by the trial court for two principal reasons.[2] Plaintiff first contends that paragraph six of the amended affidavit, in which Asmus states that the Disclosure "is one of the very first forms presented and explained by the registration staff" violates Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) because it is conclusory and not within Asmus's personal knowledge. However, as defendant's vice president of legal affairs and general counsel and the creator of the Disclosure, Asmus would certainly have personal knowledge as to the custom used by the registration staff to present to patients a form he created and implemented the use of. See *Safeway Insurance Co. v. Ebijimi*, 2018 IL App (1st)

---

[2] Plaintiff purports to address his argument to both of Asmus's affidavits. However, defendant moved to withdraw Asmus's first affidavit, the trial court's order discusses the amended affidavit, and the substance of plaintiff's arguments on appeal address the amended affidavit. Thus, we limit our discussion to the amended affidavit.

170862, ¶ 39 (noting that an affidavit satisfies the requirements of Rule 191(a) if it appears that the affidavit is based on the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents). Thus, we conclude that this information was not conclusory and was within Asmus's personal knowledge.

¶ 38    Plaintiff also contends that all but two of the remaining paragraphs of the amended affidavit are "impertinent." The paragraphs about which plaintiff complains: (1) set forth Asmus's position for defendant (vice president of legal affairs and general counsel); (2) state that Dr. Prentiss and Dr. Smith were independent contractors/physicians and have never been employed by or received a paycheck from defendant; (3) indicate that neither Dr. Prentiss nor Dr. Smith was listed as an employee physician on the Disclosure when plaintiff underwent his procedure; (4) state that as independent physicians, Drs. Prentiss and Smith would have to provide proof of insurance and did so as evidenced by certificates of insurance attached to the amended affidavit showing they were insured by Dreyer Medical Group, Ltd. Plaintiff, however, fails to explain why these paragraphs are "impertinent." Nor does he cite authority in support of this claim. As such, plaintiff has forfeited these claims. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (requiring the appellant's brief to contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on); *People v. Soskin*, 2021 IL App (2d) 191017, ¶ 39 (holding that the failure to comply with rules requiring that a party raise arguments and provide citation to legal authority or the record results in forfeiture); *In re Marriage of Woodrum*, 2018 IL App (3d) 170369, ¶ 63 (observing that the failure to develop an argument on appeal and provide authority in support thereof results in forfeiture). Thus, the trial court properly declined to strike Asmus's amended affidavit.

¶ 39                              C. Summary Judgment

¶ 40    Under Illinois law, medical providers can only be held vicariously liable for the conduct of an alleged agent under certain circumstances. *Gilbert*, 156 Ill. 2d at 523. For instance, a hospital may be held responsible for the conduct of medical professionals when there is an employment or agency relationship. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 31 (1996); *Groeller v. Evergreen Healthcare Center, LLC*, 2015 IL App (1st) 140932, ¶ 21. Plaintiff argues that the trial court improperly granted summary judgment in defendant's favor because he "met the legal standard showing that the attending physicians were agents or apparent agents of [defendant] making [defendant] vicariously liable for medical battery."

¶ 41                                1. Employment or Actual Agency Relationship

¶ 42    Aside from a passing statement located on the final page of his written brief that "[w]ho Dr. Prentiss worked for is anybody's 'guess,' " nowhere does plaintiff assert a question of fact exists as to Dr. Prentiss's employment status. Thus, plaintiff has forfeited any argument that Dr. Prentiss is an employee of defendant. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Soskin*, 2021 IL App (2d) 191017, ¶ 39; *In re Marriage of Woodrum*, 2018 IL App (3d) 170369, ¶ 63. As for Dr. Smith, defendant concedes that he "appears not to be an employee of Rush-Copley because of the omission of his name on the Disclosure form." Despite this concession, plaintiff suggests elsewhere in his brief that Dr. Smith's employment status with defendant is still in question. We disagree.

¶ 43    At his deposition, Dr. Smith testified that in March 2012, the time of the occurrence, he was an employee of Dreyer Medical Group and merely had surgical privileges at defendant's facility. Dr. Smith further elaborated that he was not an employee of defendant in March 2012, has never been an employee of defendant, has never received a paycheck from defendant, and has never been issued a W2 form by defendant. In his amended affidavit, Asmus also stated that Dr.

Smith was an "independent contractor/physician" and has never been employed by or received a paycheck from defendant.

¶ 44    Notwithstanding the foregoing, plaintiff argues that Dr. Smith made "contradictory statements *** about who actually employed [him]." Plaintiff suggests that this contradictory testimony alone establishes that there is a question of fact as to Dr. Smith's employment status in March 2012. It is true that Dr. Smith initially testified that he worked for "Advocate." However, later in his deposition, he stated that he was "an employee of Dreyer Medical Group which [was] sold to Advocate and became Advocate Medical Group or Advocate Dreyer." We do not view Dr. Smith's initial testimony that he worked for Advocate to be contradictory to his later testimony. Rather, the latter testimony was a clarification of the earlier testimony. That is, Dr. Smith worked for Dreyer Medical Group at the time of the occurrence, but that entity was later acquired by Advocate Medical Group. More importantly, the entity for whom Dr. Smith actually worked is irrelevant as it is clear that he never worked for defendant. As noted above, in his deposition, Dr. Smith testified that he was not an employee of defendant in March 2012, has never been an employee of defendant, has never received a paycheck from defendant, and has never been issued a W2 form by defendant. Dr. Smith's testimony was corroborated by the statements in Asmus's amended affidavit that Dr. Smith was an "independent contractor/physician" and has never been employed by or received a paycheck from defendant. Plaintiff presented no contrary evidence.

¶ 45    Continuing, plaintiff asserts that Dr. Smith could have never worked for Advocate because, according to the Illinois Secretary of State, Advocate did not acquire Dreyer Medical Group until December 31, 2015, and Dr. Smith retired in September 2013. As stated above, however, the entity that actually employed Dr. Smith is irrelevant as it is clear that he was never employed by defendant.

¶ 46     In short, the relevant testimony shows that Dr. Smith was not an employee of defendant at the time of the relevant occurrence in March 2012. Accordingly, there is no question of fact as to whether Dr. Smith was an employee or actual agent of defendant at the time of plaintiff's care. Moreover, plaintiff forfeited any claim that Dr. Prentiss was an employee or actual agent at the time of his care by failing to develop such an argument in his brief on appeal. Accordingly, we agree with the trial court that defendant cannot be held vicariously liable for the alleged negligent conduct of Dr. Prentiss or Dr. Smith based on an employment or actual agency relationship.

¶ 47                    2. Apparent Agency Relationship

¶ 48     A hospital may be vicariously liable pursuant to the doctrine of apparent agency for the negligence of a physician who is an independent contractor. *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 179 (2006). "Apparent authority in an agent is the authority which the principal knowingly permits the agent to assume, or the authority which the principal holds the agent out as possessing." *Gilbert*, 156 Ill. 2d at 523. "If a patient knows, or should have known, that the treating physician is an independent contractor, then the hospital will not be liable." *Gilbert*, 156 Ill. 2d at 522.

¶ 49     For a hospital to be vicariously liable for negligent medical treatment rendered in the hospital by an independent-contractor physician under the doctrine of apparent authority, the plaintiff must establish that: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence. *Gilbert*, 156 Ill. 2d at 525. As noted, the first two prongs of the *Gilbert* test are

frequently grouped together and have been referred to as the "holding out" elements. *Gilbert*, 156 Ill. 2d at 525. We refer to the third prong as the "justifiable reliance" element. The "holding out" elements are satisfied if the hospital holds itself out as a provider of emergency room care without informing the patient that the care is provided by independent contractors. *Gilbert*, 156 Ill. 2d at 525. Stated differently, the "holding out" elements are not satisfied if the evidence demonstrates that the patient was placed on notice of the independent contractor status of the physicians. *Wallace v. Alexian Brothers Medical Center*, 389 Ill. App. 3d 1081, 1087 (2009). The third prong— justifiable reliance—focuses on whether the plaintiff justifiably relied on the holding out of the hospital that the physicians were its agents or employees when accepting treatment. *Scardina*, 308 Ill. App. 3d at 365. The justifiable-reliance prong is satisfied if the plaintiff relies upon the hospital to provide complete emergency room care, rather than upon a specific physician. *Gilbert*, 156 Ill. 2d at 525.

¶ 50     Instructive to our analysis is *Wallace*, 389 Ill. App. 3d 1081. In that case, the plaintiff brought an action against the defendant hospital (hospital), seeking to hold it vicariously liable for the conduct of certain doctors who treated the plaintiff's minor daughter in the emergency room. Soon after the plaintiff's arrival at the hospital, she signed a consent form which read in relevant part as follows:

> "I understand that physicians who provide professional services to me such as my attending physician and consulting physicians, are not the employees or agents of [the hospital], but they are independent contractors who will be providing their specialized services on my behalf and as such will be my employees or agents. [The hospital] is not responsible for the services these physicians provide. These physician's and their employee's services will be billed separately.

* * *

**I acknowledge that I have read this consent form (or a large print version) and have had the opportunity to ask questions.**" (Emphasis in original.) The hospital moved for partial summary judgment, arguing that there was no genuine issue of material fact regarding whether there was an apparent agency relationship between it and the attending physicians. In support of its motion, the hospital attached, *inter alia*, the consent form signed by the plaintiff. The trial court granted the hospital's motion, and the plaintiff appealed.

¶ 51    On appeal, the reviewing court, in analyzing the "holding out" elements of the *Gilbert* test noted that "if [the] plaintiff knew or should have known that [the attending physicians] were independent contractors, then [the hospital] cannot be held vicariously liable." *Wallace*, 389 Ill. App. 3d at 1087 (citing *Gilbert*, 156 Ill. 2d at 522). In other words, "if [the] plaintiff was placed on notice of the independent contractor status of these doctors, 'it would be unreasonable' for her to assume that they were employed by [the] defendant and, thus, she could not sustain an apparent agency claim against defendant." *Wallace*, 389 Ill. App. 3d at 1087 (citing *York*, 222 Ill. 2d at 202). The court determined that the plaintiff signed a consent form that clearly indicated that the hospital contracted with independent physicians to provide services to patients. *Wallace*, 389 Ill. App. 3d at 1088. Thus, the court held, the plaintiff knew or should have known that the attending physicians were independent contractors. *Wallace*, 389 Ill. App. 3d at 1088.

¶ 52    Turning to the facts in this case, the admissible evidence of record establishes that shortly after his arrival at defendant's emergency room, plaintiff was presented with the Disclosure. The Disclosure specifically identified by name the 52 physicians who were employees at defendant's facility. The Disclosure further provided that if any physician is not listed on the form, then he or she is not an agent or employee of defendant. Plaintiff initialed and signed the Disclosure. The

Disclosure stated, in bold print, that, as the signatory, plaintiff had read the form, understood it, and had the opportunity to ask questions. Thus, by signing the form, plaintiff acknowledged that he was aware that if his physicians were not specifically listed on the form, then they were not employees or agents of defendant. Neither Dr. Prentiss nor Dr. Smith was listed on the form. Because the status of Dr. Prentiss and Dr. Smith was clearly set out in the Disclosure, plaintiff knew or should have known that they were independent contractors.

¶ 53    Plaintiff suggests, however, that because he never met Dr. Smith prior to surgery, he should not be bound by the Disclosure. It is undisputed that plaintiff did not speak with Dr. Smith prior to the procedure. However, that is because Dr. Smith's involvement was not planned. Dr. Smith was only called upon to participate in plaintiff's procedure when a catheter became necessary. Plaintiff was made aware that such an intervention may occur when he signed a form entitled "Consent for Medical/Surgical Procedures." That form explicitly stated:

> "I understand that my doctor may chose other practitioners, including residents *** to do or help with procedures. These practitioners may perform significant surgical tasks including: opening and closing incisions, harvesting grafts, dissecting tissue, removing tissue, implanting devices, and altering tissues. All qualified practitioners will only perform tasks that are within their scopes of practice and for which they have been granted clinical privileges."

During his deposition, plaintiff admitted that he signed the consent form. Moreover, plaintiff cites no case law supporting any argument that a failure to meet with every physician prior to a procedure somehow establishes the "holding out" elements with respect to the unmet members of the surgical team. Compare *Steele v. Provena Hospitals*, 2013 IL App (3d) 110374, ¶ 138 (citing *York*, 222 Ill. 2d at 182) (noting that a hospital prevails on the "holding out" elements if " 'the

patient is in some manner put on notice of the independent status of the professionals with whom he might be *expected* to come into contact.' " (Emphasis supplied.)).

¶ 54    Plaintiff also argues that because the Disclosure does not specifically state that defendant uses third-party physicians for urology, a reasonable person could not deduce that the urologist on call, in this case, Dr. Smith, was not defendant's agent. The second paragraph of the Disclosure stated that any physician who provided one of the types of the medicine listed was automatically excluded as an employee of defendant. However, we do not read that paragraph to imply that anyone with a practice *not* listed in the paragraph *was* an employee. If there was any such implication, the third paragraph dispelled it by stating plainly that the only physicians who were defendant's employees were those listed alphabetically under "Employed Physicians." The line below the third paragraph stated plainly that any physician not listed was not an employee. Accordingly, we reject this argument.[3]

¶ 55    In short, it is plaintiff's burden to show a factual basis establishing defendant acted in a manner that would lead a reasonable person to conclude that it held out Dr. Prentiss and Dr. Smith as its agents. Construing the evidence strictly against defendant and liberally in favor of plaintiff, we conclude that nothing in the record forms such a basis or reasonable inference as to either physician. Accordingly, plaintiff failed to satisfy the "holding out" elements. Since plaintiff failed to establish the "holding out" elements we need not consider the issue of justifiable reliance. See

---

[3] Plaintiff also reiterates his claim that he was not presented with the Disclosure until after his procedure. However, this argument is based on paragraphs five and six of his affidavit which were properly stricken. Therefore, there is no admissible evidence to establish that the Disclosure was signed after plaintiff's procedure.

*Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007) (observing that if the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper). The trial court therefore properly granted defendant summary judgment.

¶ 56                                    III. CONCLUSION

¶ 57    For the reasons set forth above, we affirm the judgment of the circuit court of Kane County.

¶ 58    Affirmed.